[No. 6519.]

## CONE, EXECUTRIX V. ELDRIDGE ET AL.

1. PRACTICE IN SUPREME COURT—*Harmless Error*—The plaintiffs had become guarantors upon several promissory notes executed by defendant's testator, and another. They had severally paid large sums of money in liquidation thereof, and presented several individual claims against the estate, for the money so expended. As assignees of the notes so executed they also presented a joint claim thereon. The executrix moved the county court to require the claimants to elect between the several claims and the joint claims; also to strike out the joint claim, because based on the same payments which were the foundation of the several claims. On similar and other technical grounds she demurred to all of the claims. These motions and demurrers were severally denied, the joint claim was allowed, and the individual claims rejected. No question was made as to the authenticity of the notes nor as to the alleged payments; nor any claim that these had been reimbursed. It appearing that the amount of the joint claim was in fact less than the amount of the several claims, it was held that whatever error had been committed in the conduct of the matter was harmless—(567, 568).

So to allow the examination of an incompetent witness whose testimony is in no way prejudicial to the complaining party—(571).

2. ——*Questions Not Presented Below*—Will not be considered—(571).

3. GUARANTEE—*Distinguished From Suretyship*—The surety is primarily liable upon the same contract with the principal. The guarantor is bound for the performance, by the principal alone, of a collateral contract, from which the guarantor's undertaking is separate and distinct. The guarantor's discharge of his obligation does not extinguish that of the principal, to which the guaranty relates. Therefore upon payment by the guarantor of a promissory note guaranteed by him, he becomes entitled to its possession, and to maintain an action upon it against the maker—(569).

4. PARTIES—*Joinder of Plaintiffs*—Several guarantors of several promissory notes, of which defendant's testator and another were the makers, had become assignees of these notes. They were entitled to maintain a joint action thereon against the executrix; and it was held that in what proportion they had

contributed to the payment or purchase of the notes was of no concern to the executrix—(570).

And though it appeared that the wives of some of these guarantors had united with them in mortgages, to secure the guaranty, and that another party, not otherwise connected with the transaction, had executed a similar mortgage, and that these securities were accepted and applied upon the notes, these circumstances were held insufficient to overthrow the presumption arising from the endorsement and delivery of the notes to the plaintiff—(572).

5. JUDGMENT—*Satisfaction—Effect*—In the same case it appeared that judgment had been recovered against both the makers of the notes, and had been satisfied. The executrix contended that inasmuch as this satisfaction discharged the other maker, the testator's estate was chargeable for only one-half the amount of the joint claim. Inasmuch as the satisfaction was entirely the result of payments made by the plaintiffs, this contention was rejected—(571).

6. EVIDENCE—*Sufficiency*—That in an action in the courts of Colorado, upon certain promissory notes, by the guarantors thereof, to whom they have been assigned, one of the notes is designated as "Ex. 6," is no evidence that such note is identical with one referred to in the complaint in a former action in one of the courts of Utah, and there designated as "No. 6," and alleged to have been paid—(573).

*Appeal from Fremont County Court*—Hon. J. L. COOPER, Judge.

Messrs. TAYLOR & SAYRE and Mr. HARDY SAYRE for appellant.

Mr. CHARLES E. WALDO, Mr. CLYDE C. DAWSON and Mr. JAMES A. STUMP for appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court:

W. H. McClure and James J. Cone executed eight promissory notes to the Deseret Savings Bank, of Salt Lake City, aggregating thirty-eight thousand dollars. Seven of them were for five thousand dollars each, and one for three thousand dollars. These notes were se-

cured by a mortgage on real estate executed by Cone. The payment of the three thousand dollar note, and four of the five thousand dollar notes, was guaranteed by John Sharp, Elias A. Smith, E. R. Eldridge and James Sharp, the remaining five thousand dollar notes being guaranteed by Smith and Eldridge. When the notes matured the mortgage securing them was foreclosed. In this action judgment was also rendered against the guarantors. The mortgaged property was sold, with the result that a large part of the indebtedness evidenced by the notes was unsatisfied. Afterwards the guarantors severally paid sums to discharge the unsatisfied balance of the judgment. Cone died, and John Sharp, Smith and Eldridge filed their respective claims against his estate, by which each claimed individually the amount he had paid as guarantor of the notes in question. James Sharp had also died, and his executors filed a claim against Cone's estate for the amount which he had paid on account of his liability as a guarantor. In addition to these individual claims, the several claimants filed a joint claim against the Cone estate, in which it was stated that the McClure and Cone notes had been assigned, transferred and endorsed to claimants on which there was due them the sum of $28,616.92. The issue of the indebtedness represented by these several claims was tried to the court, and judgment rendered on the joint claim in the sum of $33,911.02, the individual claims being disallowed. From this judgment the executrix has appealed.

In advance of the hearing the executrix moved the court to require claimants to elect between their individual claims and joint claim, and after such election, to strike the other claim or claims, on the ground that all the claims arose out of the same notes and transactions, and that the individual claims and joint claim were inconsistent. The motion was held for

consideration until the evidence was all in. The executrix next moved the court to strike the joint claim for the reason that the several claims disclosed that all arose out of,. and were based on, the same notes and transactions (this was admitted by counsel for claimants) ; and also showed that the only relief to which claimants were entitled was to be reimbursed in such sums as each had paid separately as guarantor. This motion was overruled tentatively. The executrix then demurred to each of the claims, upon the following grounds:

(1) That as to each individual claim, there is another action pending, to-wit, the joint claim.

(2) That as to the joint claim, other actions are pending, to-wit, the individual claims.

(3) That as to the joint claim, there is a misjoinder of claimants.

(4) That as to all the claims, there is an improper joinder of causes of action.

(5) As to each claim, want of facts.

This demurrer was overruled. When the testimony was completed, the executrix renewed her motions, to which reference has been made. They were then overruled.

The first point urged upon our attention by counsel for appellant, is, that the court erred in overruling the motions and demurrer. In support of this contention it is said that the claims are inconsistent; that claimants could not have both an individual and joint claim growing out of the same transaction, and that they were bound to know, in advance, which statement regarding their claims was true. If the Civil Code governs proceedings of the character under consideration, (upon which we express no opinion), a serious question would be presented, were it not for the fact that the record affirmatively discloses that the executrix was not prejudiced by overruling the

motions and demurrer. There is no claim that the notes were not executed by Cone and McClure. There was no claim of a failure of consideration. It stands undisputed that severally the claimants paid sums which, in the aggregate, discharged the amount due on the notes, after deducting the amount realized from a sale of the mortgaged premises. Their individual claims were disallowed. It is not claimed that claimants were ever reimbursed in any sum whatever for the amount which they paid to discharge their obligation as guarantors, and the judgment which was rendered was only for the amount which they paid for this purpose. In fact, it appears that the judgment on the joint claim is for a less sum than the individual claims aggregated, for the reason that in the former there ·was only claimed and allowed the amount paid necessary to take up the notes, while in the individual claims the several amounts claimed included costs, which the respective parties paid to satisfy the judgment rendered in the foreclosure proceedings, and interest at a higher·rate upon the several amounts thus paid than provided for in the notes. So that it clearly appears the executrix was not prejudiced by the rulings complained of. Our Civil Code, § 78 Mills', expressly provides:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect. * * *"

The material and important question is, whether the testimony established a joint claim upon the notes. It is urged that it does not, because it appears the money paid by each claimant was paid out of his individual funds, and not out of any joint funds belonging to them; and hence, it is contended, the claim of each was individual. In other words, it is con-

tended that there being no joint right, no joint recovery could be had. It is also claimed that, as under their contract of guaranty, the claimants were each responsible for the entire sum which their contract covered, the discharge of their contract by payment was a payment of the notes to the holder, and not a purchase of them from it. Neither of these propositions is tenable. We will consider the latter first. There is a marked distinction between a contract of guaranty and one of suretyship. A surety is primarily liable on his contract; that is to say, he is bound with the principal on the identical contract under which the liability of the principal accrues, while the guarantor is only bound for the performance of a prior or collateral contract, by which the principal is alone obligated; that is, the contract of the guarantor is separate and distinct from that of his principal, so that the liability of a guarantor does not attach until default by his principal. In other words, the obligation of a surety is primary, and that of a guarantor secondary.—20 Cyc., 1400; 2 Daniel on Negotiable Instruments, § 1733.

Because of this distinction, the discharge of the contract of guaranty by the guarantor does not extinguish or satisfy the obligation to which the contract of guaranty relates; consequently, it is universally held that upon payment of a note by a guarantor, when only secondarily liable, he becomes entitled to the possession of such note, and may maintain an action upon it against the maker.—2 Daniel on Negotiable Instruments, § 1758; *Tebery v. Swenson,* 32 Kan. 224; *Anthony Investment Co. v. Law,* 62 Kan. 193; *Jennings v. Pratt,* 19 Utah 129; *Jacobs v. Pierce,* 132 Ill. *App.* 547.

Such, in effect, as applied to the facts of this case, is the provision of our Negotiable Instruments Act, § 4584 Rev. Stats. 1908. We therefore conclude

that the discharge of the contract of guaranty did not extinguish the notes, and that claimants, if they were the joint owners, could maintain a joint claim thereon against the makers or either of them.

The testimony disclosed that the sum or sums which each paid was out of his individual funds, but after these payments the notes to which their contract of guaranty related were assigned and delivered to them jointly. Whether the funds by reason of which this arrangement was affected were joint or individual is immaterial, if, by an agreement between themselves with the holder of the notes, they became the joint owners thereof. In such circumstances the amount to which each of the joint owners would be entitled of the sum recovered from their principal would, doubtless, be in proportion to what each had paid, but that is not a matter in which the maker is concerned; so that from the testimony it not only appears that claimants were the joint owners of the notes in question by a special arrangement between themselves and the holder, but that they also became such owners of the notes which they jointly guaranteed by operation of law. Perhaps the latter would not, of itself, entitle them to maintain a joint claim on all the notes, but the arrangement between the holder and themselves, to which we have referred, did.

The executrix objected to the introduction of any testimony to support the joint claim upon the ground that it had not been properly exhibited. This objection was based upon the assumption that the claim was founded upon a judgment, and that for this reason the exemplification of the judgment should have been filed. This assumption is not warranted. The claim was based upon the notes which claimants had guaranteed and paid. These notes were attached to, and filed with, the claim.

It developed at the trial that the claim was verified by one of the claimants before Hyram S. Young, a notary, and also one of the claimants as executor. For this reason it is urged that the claim was not properly verified. No such objection was made below, and will not be considered here.—*Jakway v. Rivers,* 48 Colo. 49; *Rice v. Cassells, ibid,* 73.

W. H. McClure was called as a witness on behalf of claimants. Counsel for the executrix objected to his being permitted to testify, upon the ground that he was disqualified by virtue of the provisions of § 4816, 2 M. A. S., which provides, in substance, that a person interested in the result of an action to which an executrix is a party, shall not be permitted to testify as a witness for the adverse party to such action, except in certain cases, and that the witness did not come within the exceptions. It is unnecessary to determine whether or not the witness was disqualified by virtue of the provisions of this section. His testimony was of a character that it could not possibly have been prejudicial to the interests of the executrix or the estate which she represents.

The judgment rendered in Utah was satisfied, and for this reason it is urged that as such satisfaction released McClure, the Cone estate could only be held for one-half of the amount of the joint claim of claimants. The satisfaction was the result of the guarantors, who are claimants, complying with their contract. Had McClure paid the judgment, claimants would not have been required to pay anything, but as he did not, they were compelled to pay the sum represented by their joint claim, which imposed upon their principals a joint and several obligation to reimburse them for the money expended to discharge their contract of guaranty. This is the obligation which they sought to enforce by their joint claim. In the circumstances above noted, the fact that the judg-

ment had been satisfied which operated to release McClure from further liability thereon to the original judgment creditor, is immaterial.

To further secure the notes executed by Cone and McClure, James Sharp and wife, and John Sharp and wife, and one Emily C. Smith mortgaged other lands. It appears that these securities were applied upon the notes in question. For this reason it is urged that to the extent such securities were credited upon the notes by accepting or subjecting property belonging to others, claimants are not entitled to recover. In other words, it is urged that we must assume that one-half of the property mortgaged by James Sharp and wife belonged to the latter; that a similar condition existed with respect to the property mortgaged by John Sharp and wife; and that Emily C. Smith was the owner of the property which she mortgaged, and that therefore property other than that of the claimants was taken or accepted upon the notes, and to this extent they have no claim against the Cone estate; but that whatever claim exists on this account belongs to the parties not guarantors whose property was applied upon the notes. We do not think there is any merit in this contention. These additional securities were unquestionably given to secure the contract of guaranty. The original notes were endorsed and delivered to the claimants by the payee, and we must assume that they paid the whole consideration to the bank for the use of those entitled thereto necessary to obtain such assignment, and are the owners thereof, there being nothing from which to infer the contrary; otherwise, the notes would not have been endorsed and delivered to them.—*Gumaer v. Sowers*, 31 Colo. 164.

It is claimed that in no event can claimants recover upon the five thousand dollar note designated as Exhibit No. 6. This claim is based upon the ground

that in the complaint filed in the Utah court to foreclose the mortgage securing the Cone and McClure notes, it is alleged that this note had been paid. It is true that this complaint does allege the payment of the note designated therein "Number 6", but that wholly fails to establish that what is designated in the record before us "Ex. 6" is the same note referred to in the complaint as "Number 6". According to the exhibit and serial numbers, when arranged in their order, the exhibits are numbered from 1 to 7, inclusive. The serial numbers are from 1459 to 1466, inclusive, with No. 1464 omitted. By whom these numbers were placed on the notes does not appear. They are not so numbered and designated in the complaint, and we cannot assume that "Number 6" therein is the same note in the record here designated "Ex. 6",—No. 1465. But if we adopt the contention of counsel for appellant to the effect that the serial numbers were the registry numbers of the payee bank, and that the notations, "Ex. 1", etc., were evidently used by the parties and adopted by the court in which the action to foreclose the mortgage securing the notes was pending for the purpose of identifying the several notes, then it is evidence that what is designated in the complaint as "Number 6" is not "Ex. 6", with the additional identification "No. 1465", for the very obvious reason that the note alleged to have been paid would not have been presented to the court, and must have been the note bearing the serial number 1464, which is not one of the notes exhibited on behalf of the claimants.

It is also urged on behalf of the appellant that much irrelevant and immaterial testimony was introduced by claimants, and that the court failed to consider all the testimony introduced when determining the validity of the joint claim. We do not deem it necessary to go into consideration of these matters

in detail. As previously intimated, the validity of the joint claim was established by uncontroverted testimony regarding the competency of which there can be no question, and the court was clearly right in rendering the judgment it did. Had it failed to do so, it certainly would have erred to the prejudice of the claimants. There was no dispute regarding the facts upon which their claim is based. It is true that the judgment rendered is a large one, but claimants are entitled to it because of the obligation which their compliance with their contract of guaranty imposed upon their principal.

Other errors are assigned which it is not necessary to specifically notice, because the disposition of other questions to which we have given attention demonstrates that they are without merit.

The judgment of the county court is affirmed.

*Judgment Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.